IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

**STATE OF TEXAS**,

                Plaintiff,

v.

**MERRICK GARLAND**, in his official capacity as Attorney General, *et al.*,

                Defendants.

Case No. 5:23-cv-00034-H

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

BACKGROUND .................................................................................................................................. 1

    I.      The Consolidated Appropriations Act, 2023 ...................................................................... 1

    II.     The Instant Lawsuit .............................................................................................................. 3

ARGUMENT ........................................................................................................................................ 4

    I.      Venue Is Improper in the Northern District of Texas under 28 U.S.C. § 1406 Because There Is No Connection Between the Complaint and this District. ................ 4

    II.     Alternatively, the Court Should Transfer this Matter to the District of Columbia or the Austin Division of the Western District of Texas under 28 U.S.C. § 1404(a). ........ 9

CONCLUSION .................................................................................................................................. 13

## TABLE OF AUTHORITIES

**CASES**

*Alabama v. U.S. Army Corps of Eng'rs*,
   382 F. Supp. 2d 1301 (N.D. Ala. 2005) ................................................................................8

*Birnbaum v. Blum*,
   546 F. Supp. 1363 (S.D.N.Y. 1982) ......................................................................................7

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) .................................................................................................7

*Chapman v. Dell, Inc.*,
   No. 09-cv-7, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ................................................9

*City of El Cenizo v. Texas*,
   5:17-cv-404 (W.D. Tex. 2017) ..............................................................................................7

*Dep't of Homeland Sec. v. New York*,
   140 S. Ct. 599 (2020) ..........................................................................................................12

*Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*,
   450 U.S. 147 (1981) ..............................................................................................................5

*Fla. Hometown Democracy, Inc. v. Browning*,
   No. 08-cv-80636, 2008 WL 3540607 (S.D. Fla. Aug. 12, 2008) ..........................................6

*Fla. Nursing Home Ass'n v. Page*,
   616 F.2d 1355 (5th Cir. 1980) ...............................................................................................5

*Florida v. United States*,
   No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) ..........................................7

*Gray Cas. & Sur. Co. v. Lebas*,
   No. 12-cv-2709, 2013 WL 74351 (E.D. La. Jan. 7, 2013) ....................................................7

*Hanby v. Shell Oil Co.*,
   144 F. Supp. 2d 673 (E.D. Tex. 2001) ..................................................................................9

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*,
   921 F. Supp. 375 (W.D. La. 1996) .....................................................................................10

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ...............................................................................................13

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) ................................................................................................12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................................................*passim*

*Leonhart v. McCormick*,
   395 F. Supp. 1073 (W.D. Pa. 1975) ......................................................................................6

*Nestor v. Hershey*,
   425 F.2d 504 (D.C. Cir. 1969) ..............................................................................................7

*Norwood v. Kirkpatrick*,
   349 U.S. 29 (1955) ...............................................................................................................10

*O'Neill v. Battisti*,
   472 F.2d 789 (6th Cir. 1972) ................................................................................................6

*Perkins v. Snider*,
   No. 94-cv-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) ..............................................7

*Republic of Iraq v. Beaty*,
   556 U.S. 848 (2009) ...............................................................................................................8

*Reuben H. Donnelley Corp. v. FTC*,
   580 F.2d 264 (7th Cir. 1978) ................................................................................................5

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) ..............................................................................................11

*Seariver Mar. Fin. Holdings v. Pena*,
   952 F. Supp. 455 (S.D. Tex. 1996) .......................................................................................9

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ......................................................................................................... 10, 11

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .............................................................................................................11

*Veba-Chemie A.G. v. M/V Getafix*,
   711 F.2d 1243 (5th Cir. 1983) ............................................................................................10

*Zhang v. Chertoff*,
   No. 08-cv-2589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) .........................................5

**STATUTES**

8 U.S.C. § 1225 .......... 2

8 U.S.C. § 1226 .......... 2

8 U.S.C. § 1231 .......... 2

28 U.S.C. § 1391 .......... *passim*

28 U.S.C. § 1404 .......... *passim*

28 U.S.C. § 1406 .......... 1, 4, 9

29 U.S.C. § 203 .......... 8

29 U.S.C. § 2617 .......... 8

42 U.S.C. § 9607 .......... 8

Consolidated Appropriations Act, 2021,
Pub. L. No. 116-260, 134 Stat. 1182 (2020) .......... 2, 6

Consolidated Appropriations Act, 2022,
Pub. L. No. 117-103, 136 Stat. 49 (2021) .......... 2

Consolidated Appropriations Act, 2023,
Pub. L. No. 117-328, 136 Stat. 4459 (2022) .......... *passim*

**OTHER AUTHORITIES**

15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) .......... 7

17 Moore's Federal Practice - Civil § 110.03 (2022) .......... 7

Allie Morris, "Texas AG Paxton says costs and 'liberal' judges led agency to settle with whistleblowers," *The Dallas Morning News* (Feb. 15, 2023), https://perma.cc/5KRD-QSLM. .......... 7

CMPP: Trauma Informed Case Management,
https://perma.cc/JW38-MAGM .......... 3, 6

Grant Opportunity, Case Management Pilot Program,
https://perma.cc/65XM-DRKJ .......... 3

U.S. Immigration & Customs Enforcement, "Alternatives to Detention,"
https://perma.cc/QM8F-FPJN .......... 2

Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed. 2022 update) .......... 6

Wright & Miller, 14D Federal Practice and Procedure § 3815 (4th ed. 2022 update) ............................. 5

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed. 2022 update) .................................... 11, 12

**INTRODUCTION**

Texas claims to be injured by two programs within the Consolidated Appropriations Act, 2023. But venue is not proper in this district. Texas does not identify any event taking place in the Northern District of Texas. Plaintiff does not reside in this District. Nor does any Defendant. Plaintiff's decision to forum shop by filing in the Northern District undermines public confidence in the administration of justice and should not be countenanced.

The proper court for this suit is either the U.S. District Court for the District of Columbia, where the law was enacted and where Defendants reside, or the Austin Division of the Western District of Texas, where Plaintiff resides. *See* 28 U.S.C. § 1391(e). Because venue is improper in this District under 28 U.S.C. § 1391(e), the case should be transferred to a proper District pursuant to 28 U.S.C. § 1406. Alternatively, this action should be transferred under 28 U.S.C. § 1404(a), because the interests of justice counsel in favor of transfer.

For these reasons, and as set forth in more detail below, transfer is warranted. In the meantime, to avoid unnecessary expenditure of the parties' and the Court's resources, Defendants respectfully request that the Court stay all outstanding deadlines, including the government's answer deadline and any other deadlines that may arise, pending resolution of this motion.

**BACKGROUND**

**I.   The Consolidated Appropriations Act, 2023**

After passing with broad bipartisan support in the Senate, on December 23, 2022, the House of Representatives passed the Consolidated Appropriations Act, 2023 (the "Act"), and President Biden signed the bill into law on December 29, 2022. Although Texas claims to be injured by one program funded by the Act and one law created by the Act, *see* Am. Compl. ¶¶ 24–39, ECF No. 4, the Act appropriates $1.7 trillion to fund wide swaths of the federal government, such as the Department of Defense, other federal departments, and the federal courts, *see* Consolidated Appropriations Act,

1

2023, Pub. L. No. 117-328, 136 Stat. 4459, 4566–622, 4668–72 (2022). The Act funds important foreign policy priorities, such as assistance to Ukraine, and an extensive range of domestic programs, such as veterans' benefits, operation of the national park system, and the special supplemental nutrition program for women, infants, and children ("WIC"). *See id.* at 4488, 4765, 4949–53, 5189–94. The Act also enacted permanent legislation, such as the Electoral Reform Act of 2022 and the Presidential Transition Improvement Act. *See id.* at 5233–46.

One domestic program funded by the Act is the Department of Homeland Security's ("DHS") Alternatives to Detention Case Management Pilot Program ("CMPP"), *id.* at 4726, which provides voluntary case management services to individuals enrolled in the U.S. Immigration and Customs Enforcement ("ICE") Alternatives to Detention program,[1] *see* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, 1449 (2020). Under the CMPP, a National Board, chaired by DHS's Officer for Civil Rights and Civil Liberties, provides grants to "nonprofit organizations and local governments . . . for the purposes of providing case management services, including but not limited to: mental health services; human and sex trafficking screening; legal orientation programs; cultural orientation programs; connections to social services; and for individuals who will be removed, reintegration services." 134 Stat. at 1449. Congress directed DHS to create this program in the appropriations law for fiscal year 2021, *id.*, and provided additional funds for the program in the appropriations law for fiscal year 2022 and in the challenged Act. *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 312; The Act, 136 Stat. at 4726. The National Board

---

[1] ICE does not release any noncitizens from detention pursuant to the CMPP, nor does the program authorize ICE to release anyone. *See* The Act, 136 Stat. at 4726; *see also* U.S. Immigration & Customs Enforcement, "Alternatives to Detention," https://perma.cc/QM8F-FPJN (noting that ICE's Alternatives to Detention program "has been in place since 2004"). ICE's authority to detain and release noncitizens is found exclusively in the Immigration and Nationality Act and applicable regulations, which permit ICE to impose conditions on release in its discretion. *See, e.g.*, 8 U.S.C. § 1225(b); 8 U.S.C. § 1226(a); 8 U.S.C. § 1231(a).

solicited applications for grants for the first year of funding, and in November 2022, the National Board selected BakerRipley, a non-profit organization in Houston, Texas, to receive a grant. *See* Grant Opportunity, Case Management Pilot Program, https://perma.cc/65XM-DRKJ; CMPP: Trauma Informed Case Management, https://perma.cc/JW38-MAGM. The National Board has not yet solicited applications for grants or awarded any grants to allocate the funds for the 2022 or 2023 fiscal years.

The Act also strengthens protections for pregnant workers. *See* The Act, 136 Stat. at 6084–89. A division of the Act titled the Pregnant Workers Fairness Act ensures that employers reasonably accommodate employees experiencing limitations relating to pregnancy, childbirth or related medical conditions. *Id.* Under the Act, it is an unlawful employment practice for covered entities, which include state employers, to refuse to "make reasonable accommodations to the known limitations related to pregnancy, child-birth, or related medical conditions of a qualified employee," unless they can show that "the accommodation would impose an undue hardship." *Id.* at 6085. The Pregnant Workers Fairness Act is not yet in effect and will take effect on June 27, 2023. *See id.* at 6089 (providing for an effective date "180 days after the date of enactment of this Act").

## II.     The Instant Lawsuit

On February 15, 2023, Plaintiff filed this suit in the Lubbock Division of the Northern District of Texas, seeking a declaratory judgment that the Consolidated Appropriations Act, 2023 was unlawfully enacted because, pursuant to a House Rule, members of the House of Representatives were able to vote by proxy. Am. Compl. ¶¶ 58–60, Prayer for Relief ¶ 1. Plaintiff also seeks a "preliminary and permanent injunctive relief enjoining Defendants from enforcing the Pregnant Workers Fairness Act against Texas" and "enjoining Defendants from continuing to fund grants through and otherwise operate DHS's pilot program," even though it challenges only one year of funding for that program. *Id.* at Prayer for Relief ¶¶ 2–3.

With regard to venue, Plaintiff asserts that "[t]his district is a proper venue because the State is located here." *Id.* ¶ 17. Texas further asserts that "a substantial part of the events or omissions giving rise to its claim occurred here," but includes no factual allegations to support this conclusory statement. *Id.* To the contrary, the Consolidated Appropriations Act, 2023 was enacted in Washington, D.C., where Defendants reside. Plaintiff's sole allegation related to an event in Texas is the National Board's award of a grant to a non-profit organization in Houston, *id.* ¶ 32, which is in the Southern District of Texas. And that grant was made pursuant to the Consolidated Appropriations Act, 2021, which Texas does not challenge. *See generally* Am. Compl. (challenging only the enactment of the Consolidated Appropriations Act, 2023).

## ARGUMENT

This Court should transfer this case to the U.S. District Court for the District of Columbia or to the Austin Division of the Western District of Texas under 28 U.S.C. § 1406 because venue is improper in this District under 28 U.S.C. § 1391(e). Alternatively, the Court should transfer this case under 28 U.S.C. § 1404(a) because the interests of justice counsel transfer.

### I. Venue Is Improper in the Northern District of Texas under 28 U.S.C. § 1406 Because There Is No Connection Between the Complaint and this District.

The federal venue statute, 28 U.S.C. § 1406, directs a district court to dismiss or transfer a case filed in the wrong district. Specifically, it provides that a district court "shall dismiss" a case laying venue in the wrong district, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Venue in a suit against the federal government is governed by 28 U.S.C. § 1391(e). That section provides that in a civil action against the United States, its agencies, or its officers, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."

4

28 U.S.C. § 1391(e)(1). Venue is not proper in this District because neither Defendants nor Plaintiff reside here, and no part of the events giving rise to this case occurred in this District.

First, all Defendants—federal agencies and federal government officials—reside in Washington, D.C. *Zhang v. Chertoff*, No. 08-cv-2589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) ("Federal defendants are generally deemed to reside in the District of Columbia."); *accord Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."), *rev'd sub nom. on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981); *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) ("[t]o hold that a federal agency can be sued . . . wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" because most federal agencies likely maintain offices in "most, if not all, judicial districts"); *see also* 14D Wright & Miller, Federal Practice and Procedure § 3815 (4th ed. 2022 update) ("under Section 1391(e)(1)(A) the relevant inquiry is the official residence").

Second, no real property is at issue in this case and, contrary to Plaintiff's bare assertion, *see* Am. Compl. ¶ 17, a "substantial part of the events or omissions giving rise to the claim" did not occur in this district, 28 U.S.C. § 1391(e)(1)(B). Indeed, Plaintiff makes no allegation that *any* event giving rise to the claim has taken place in this district. *See generally* Am. Compl. The basis for the lawsuit is that the House of Representatives lacked a quorum when it passed the law, but the House is located in Washington, D.C. The sole allegation related to activities in Texas is the distribution of grant money to a non-profit in Houston, which is in the Southern District of Texas. *See id.* ¶ 32. And even this allegation has no connection to Plaintiff's claim concerning the enactment of the Act, as the grant was made pursuant to the Consolidated Appropriations Act, 2021, which Plaintiff does not challenge. *See id.* (noting that the "program's board announced that Houston would serve as one of its first two

5

sites" in "November 2022," which was before the Consolidated Appropriations Act of 2023 was enacted); *see also* 134 Stat. at 1449; CMPP: Trauma Informed Case Management, https://perma.cc/JW38-MAGM (stating that "[t]he FY 2021 Department of Homeland Security (DHS) Appropriations Act provided $5 million for a Case Management Pilot Program" and that "on November 30, 2022, the [Case Management Pilot Program] Board selected" BakerRipley in Houston as one of the "first two CMPP sites and service providers").

Third, Plaintiff does not reside in this District. Where a State sovereign brings suit, the sovereign resides in the district where it "maintains its principal place of business." 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business."); Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed. 2022 update) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time."). Accordingly, the State of Texas "resides" for venue purposes in its principal place of business, its capital Austin, located in the Austin Division of Western District of Texas. *See, e.g.*, *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government.") (citing 1 Moore's Federal Practice 1487–88 ("Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties.")); *Fla. Hometown Democracy, Inc. v. Browning*, No. 08-cv-80636, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008) (applying the "'general rule' that in suits against public officials, a defendant's residence for venue purposes is the district where he performs his official duties" to Florida Secretary of State); *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state

6

officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 15 Bus. & Com. Litig. Fed. Cts. § 162:39 (5th ed. 2022 update) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties. State officials with 'statewide jurisdiction' may be deemed to reside in the state capitol."); *Perkins v. Snider*, No. 94-cv-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties."); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's Federal Practice - Civil § 110.03 (2022) (same).

Indeed, the State of Texas has previously maintained in another suit that "any argument that venue can lie in a 'place of injury,' which Plaintiffs could allege is in any part of the [State of] Texas, 'is contrary to the venue statute and the weight of jurisprudence.'" Texas's Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Transfer, *City of El Cenizo v. Texas*, 5:17-cv-404, ECF No. 32-1, at 4 (W.D. Tex. filed June 8, 2017) (quoting *Gray Cas. & Sur. Co. v. Lebas*, No. 12-cv-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013)); *see id.* at 10 (arguing that venue is improper when Plaintiffs "assert no particular facts about the operation of [the challenged law] in their municipalities or counties"). Rather, Texas argued in that case that the sole venue for its suit was in Austin because that is where Defendant State government officials "perform their official duties." *Id.* at 5. Texas now takes the opposite view.[2]

Plaintiff may rely on out-of-circuit cases for the proposition that a State resides for venue purposes in every district or division within its sovereign territory. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018); *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2

---

[2] On the same day that Texas filed this lawsuit, its Attorney General criticized litigants filing suit against the State in what he deemed to be an unsuitable forum. *See* Allie Morris, "Texas AG Paxton says costs and 'liberal' judges led agency to settle with whistleblowers," *The Dallas Morning News* (Feb. 15, 2023), https://perma.cc/5KRD-QSLM.

(N.D. Fla. Jan. 18, 2022); *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005). But this Court should decline to follow those cases, which erroneously conclude that a State sovereign resides in all judicial districts within its borders without addressing the explicit statutory text of section 1391.

To the contrary, Congress recognized six specific entities in the venue statute as "residing" in a certain district:

- Corporations, 28 U.S.C. § 1391(d);
- "[A]n officer or employee of the United States or any agency thereof acting in his official capacity," 28 U.S.C. § 1391(e)(1);
- Foreign states, 28 U.S.C. § 1391(f);
- Natural persons, 28 U.S.C. § 1391(c)(1);
- "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," 28 U.S.C. § 1391(c)(2); and
- Defendants "not resident in the United States," 28 U.S.C. § 1391(c)(3).

State sovereigns are not specifically enumerated and—being neither the federal government, a corporation, a foreign state or resident in a foreign country, nor a natural person—fall into the residual category under section 1391(c)(2) for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated." Such a covered entity, "if a plaintiff," is resident "*only* in the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2) (emphasis added). "[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]" *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009). If Congress intended to limit the entity category described in section 1391(c)(2) "to particular [entities] that it had in mind, it could have enumerated them individually," as it did with the federal government, foreign governments, and other persons and entities. *Id.* Congress knows how to make explicit provisions for States, and particularly State governments, when it chooses. *See, e.g.*, 42 U.S.C. § 9607(d)(2); 29 U.S.C. § 2617(a)(2); 29 U.S.C. § 203(x). Because it did not do so in

8

section 1391, under that section, a State, when acting as a plaintiff, resides where it maintains its principal place of business: the State capitol. *See* 28 U.S.C. § 1391(c)(2).

The only proper venues for this case under section 1391(e) are the District of Columbia or the Austin Division of the Western District of Texas.[3] Thus, the Court should transfer this case under 28 U.S.C. § 1406. *See Seariver Mar. Fin. Holdings v. Pena*, 952 F. Supp. 455, 462 (S.D. Tex. 1996) (noting that the District of Columbia was an "obvious" venue choice in light of the plaintiffs' challenge to the constitutionality of federal legislation).

## II.  Alternatively, the Court Should Transfer this Matter to the District of Columbia or the Austin Division of the Western District of Texas under 28 U.S.C. § 1404(a).

Even if the Court finds that venue is proper in this District, it should nevertheless transfer the case to the District of Columbia or to the Austin Division of the Western District of Texas pursuant to 28 U.S.C. § 1404(a).

Under section 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc). "Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see also, e.g.*, *Chapman v. Dell, Inc.*, No. 09-cv-7, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "'the operative

---

[3] The Court should not transfer the case to the Southern District of Texas, as that district would also be an improper venue. Although Texas alleges that grant money was distributed to a Houston non-profit organization, Am. Compl. ¶ 32, this event did not give rise to Texas's claim, as the grant was not made pursuant to the Act.

facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum.'" (quoting *Icon Indus. Controls Corp. v. Cimetrix, Inc.,* 921 F. Supp. 375, 383–84 (W.D. La. 1996))). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues that lack any substantial connection to the litigation. *Volkswagen*, 545 F.3d at 313. By filing in a District that has no connection to the claims, parties, or potential witnesses in this case, Plaintiff has "abus[ed] [its] privilege under § 1391." *Id.* Transfer is warranted here "[f]or the convenience of parties and witnesses," and because transfer is "in the interest of justice[.]" 28 U.S.C. § 1404(a).

Transfers under section 1404(a) are to be more freely granted than dismissals ordered on *forum non conveniens* grounds. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than had been required to dismiss on *forum non conveniens* grounds); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983) (the "heavy burden traditionally imposed upon defendants by the *forum non conveniens* doctrine—dismissal permitted only in favor of a substantially more convenient alternative—was dropped in the § 1404(a) context"). And while district courts are empowered with substantial discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), the Fifth Circuit, sitting en banc, has held that a district court "clearly abuse[s] its discretion in denying [a defendant's] transfer motion" when "the only connection between [the] case and the [chosen division] is plaintiffs' choice to file there," *Volkswagen*, 545 F.3d at 318 (brackets omitted). Moreover, it is well settled "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction."

Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed. 2022 update) (collecting cases); *see also Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964).

The public and private factors that guide the section 1404 analysis all favor transfer here. *See Volkswagen*, 545 F.3d at 315. "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312. If the answer is yes, the Court must then determine whether the party that "seeks the transfer" has shown "good cause," meaning that it has "demonstrate[d] that the transferee venue is clearly more convenient." *Id.* at 315. The Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (citation omitted). These factors "are not necessarily exhaustive or exclusive." *Id.* Further, the public factors collectively—which include "systemic integrity and fairness," *Stewart Org.*, 487 U.S. at 30—"may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result," *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

The private factors, which focus on the convenience of the parties and witnesses in litigating in the chosen District, militate in favor of transfer here. The challenged law was enacted in Washington, D.C. and all 17 Defendants reside there. *See Volkswagen*, 545 F.3d at 316. To the extent that Texas's convenience is at issue, its principal place of business and its attorneys are in Austin.

11

The public interest factors strongly favor transfer. The public interest factor that recognizes that there can be a "local interest in having localized interests decided at home" weighs heavily in favor of transfer out of this District. *See id.* Even if this Court adopts a capacious view of where Texas "resides," the State is plainly at home in the State capital, Austin, where the Attorney General, who has brought this lawsuit, has his principal office. Moreover, none of the Defendants resides in this District. In such circumstances, it is an abuse of discretion to "deny[] transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (footnotes omitted).

Finally, even if the convenience factors did not clearly favor transfer to Washington, D.C.—which they do—"the interest[s] of justice," 28 U.S.C. § 1404(a), alone favor transfer. *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (collecting cases). Not only is there no public interest in having this matter litigated in this District, the public's interest in the fair administration of justice would be harmed if a filing with strong indicia of judge shopping were left unchecked. As Justice Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges, sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (mem.) (Gorsuch, J. concurring) (criticizing "gamesmanship" by plaintiffs seeking nationwide injunctions). Given that Texas has provided no explanation for its decision to sue far afield from where its state capital sits and where its attorneys work, allowing this lawsuit to proceed in the Northern District of Texas could give rise to a public perception that Texas is trying to "shop for a friendly forum."[4] *Id.*

---

[4] To be clear, Defendants are not questioning this Court's ability to decide the case fairly. Rather, transferring to another venue would avoid the public perception of unfairness that may arise from the Plaintiff's unexplained choice to file in a forum with no connection to the dispute.

In short, there is no local interest in having this case adjudicated in a District where none of the parties resides and none of the underlying events occurred. This is exactly the sort of case where other venues—including the District Court for the District of Columbia—"have a greater 'stake' in the litigation" than this District. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (citing *Volkswagen*, 545 F.3d at 317–18). Accordingly, the Court should transfer this case, either to the U.S. District Court for the District of Columbia or to the Austin Division of the U.S. District Court for the Western District of Texas.

## CONCLUSION

This District is not the appropriate forum for Plaintiff's claims. For the reasons articulated herein, the Court should transfer this action either to the U.S. District Court for the District of Columbia or to the Austin Division of the U.S. District Court for the Western District of Texas.

Dated: February 27, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOHN GRIFFITHS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Branch Director

*/s/ Courtney D. Enlow*
COURTNEY D. ENLOW (N.C. Bar No. 46578)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 616-8467
Fax: (202) 616-8470
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on February 27, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

                  */s/ Courtney D. Enlow*
                  COURTNEY D. ENLOW
                  Senior Counsel
                  United States Department of Justice
                  Civil Division, Federal Programs Branch
                  1100 L Street, N.W.
                  Washington, D.C. 20005
                  Tel: (202) 616-8467
                  Fax: (202) 616-8470
                  Email: courtney.d.enlow@usdoj.gov