United States District Court
Northern District of Texas
Lubbock Division

State of Texas,

    *Plaintiff*,

v.

Merrick Garland, *et al.*,

    *Defendants*.

No. 5:23-cv-34-H

**Plaintiff's Opposition to Motion to Transfer Venue**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. 2

Table of Authorities ......................................................................................................... 3

Introduction ..................................................................................................................... 5

Legal Standards ................................................................................................................ 5

Argument ......................................................................................................................... 6

    I.    Venue is proper here because Texas resides here. ..................................... 6

        A.    Texas resides in this district. ................................................................ 6

        B.    The cases establish that Texas resides in this district. ......................... 8

    II.    The Defendants have not demonstrated that another venue is clearly more convenient. ..................................................................................................... 10

        A.    The private-interest factors weigh against transfer. ........................... 10

            1.    The sources of proof are relatively easy to access. ........................... 10

            2.    There is no evidence that compulsory process is needed to secure the attendance of witnesses. ...................................................................... 12

            3.    There is no evidence that costs will prevent willing witnesses from attending. ............................................................................................... 13

            4.    There is no evidence relevant to the catchall factor. ....................... 13

        B.    The public-interest factors weigh against transfer .............................. 14

            1.    This division is less congested than the courts and divisions the Defendants suggest. ................................................................................ 14

            2.    This case presents a local issue that is appropriate to decide here. . 15

            3.    The Court is familiar with the governing law. ................................ 16

            4.    There are no conflict-of-laws problems. .......................................... 16

    III.    The Defendants' attempt to dictate the forum must be rejected. ............. 16

Conclusion ..................................................................................................................... 18

Certificate of Service ..................................................................................................... 20

## Table of Authorities

**Cases**

*Alabama v. Army Corps of Engineers*
    382 F. Supp. 2d 1301 (N.D. Ala. 2005) .................................................................. 8

*Atlanta & F. Railway Co. v. Western Railway Co. of Alabama*
    50 F. 790 (5th Cir. 1892) ............................................................................... 7, 8, 9

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018) ................................................................................ 8, 9

*City of El Cenizo v. Texas*
    No. 6:17-CV-404, 2017 WL 6402990 (W.D. Tex. Aug. 15, 2017) ................. 9, 10

*David v. Girardi*
    No. 3:23-cv-0108, 2023 WL 1110303 (N.D. Tex. Jan. 27, 2023) ....................... 13

*Florida v. United States*
    No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) ..................... 8, 9

*Hidden Values, Inc. v. Sandoval*
    No. 3:09-cv-34, 2009 WL 10677477 (N.D. Tex. June 26, 2009) ....................... 16

*Humble Oil & Refining Co. v. Bell Marine Service*
    321 F.2d 53 (5th Cir. 1963) ................................................................................. 17

*In re TS Tech USA Corp.*
    551 F.3d 1315 (Fed. Cir. 2008) ........................................................................... 17

*In re Volkswagen AG (Volkswagen I)*
    371 F.3d 201 (5th Cir. 2004) .............................................................................. 13

*In re Volkswagen AG (Volkswagen II)*
    545 F.3d 304 (5th Cir. 2008) ................................................................... 6, 15, 17

*James v. Experian Info. Solutions, Inc.*
    No. 3:12-cv-902, 2014 WL 29041 (E.D. Va. Jan. 2, 2014) ................................ 16

*Mateos v. Montemayor*
    919 F. Supp. 2d 817, 825 (W.D. Tex. 2013) ....................................................... 16

*McNew v. C.R. Bard, Inc.*
    No. 1:19-cv-195, 2020 WL 759299 (N.D. Tex. 2020) ........................................ 12

*Minn-Dak Farmers Co-op. v. Espy*
    851 F. Supp. 1423 (D.N.D. 1994) ....................................................................... 18

*Pennsylvania v. Trump*
  351 F. Supp. 3d 791 (E.D. Pa. 2019)
  *rev'd on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020) .................................................................................................. 9

*Texas v. U.S. Dept. of Homeland Security*
  No. 6:23-CV-00007, 2023 WL 2457480 (S.D. Tex. Mar. 10, 2023) (mem. op.) 9

*Van Dusen v. Barrack*
  376 U.S. 612, 635 (1964) ........................................................................................16

**Statutes**

28 U.S.C. § 137 .........................................................................................................17

28 U.S.C. § 1391.................................................................................................. passim

28 U.S.C. § 1404.................................................................................................. passim

28 U.S.C. § 1406 ........................................................................................................5

**Other Authorities**

14D Wright & Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022) ............7

Admin. Off. of U.S. Courts, *Federal Court Management Statistics—Profiles* (Sep. 30, 2022)
  (available at https://www.uscourts.gov/file/62591/download).........................14

# Introduction

If the Defendants truly believed the public doubts the Court's impartiality because Texas filed this case here, they would move to recuse. They haven't, because their "public perception" concerns amount to nothing more than an accusation of forum shopping, for which the transfer factors already account.

And none of the Defendants' other arguments stands up. Federal courts are unanimous that, as a sovereign State, Texas by definition resides in every place within its borders. The Defendants barely attempt to carry their burden to establish that another venue is clearly more convenient, identifying not a single witness, piece of evidence, or cost that warrants moving this case to somewhere they prefer.

The case was properly brought here, and the Defendants offer no evidence to support their assertion it should be elsewhere. The motion to transfer should be denied.

# Legal Standards

The general venue statute, 28 U.S.C. § 1391, includes subdivision (e), enacted in 1962 to govern venue in civil suits against "an officer or employee of the United States or any agency thereof . . . or an agency of the United States[.]" One of the permissible venues for such a suit is a district where a "plaintiff resides if no real property is involved in the action." *Id.*

If a plaintiff chooses an improper venue, the court can transfer the case to a proper one. 28 U.S.C. § 1406(a). If a lawsuit is filed in a proper venue, the court may, under some circumstances, transfer it to a district or division where it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The movant must show good cause for such a transfer by showing, based on eight factors, that its proposed venue is "clearly more convenient" than the one the plaintiff chose. *In re Volkswagen of Am., Inc.*

5

(*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008). If it doesn't meet that burden, the plaintiff's choice should be respected. *Id.*

### ARGUMENT

This case should remain before this Court because it is a proper venue and the Defendants have not demonstrated that another venue is clearly more convenient.

First, Lubbock is a proper venue. Contrary to the Defendants' argument, Texas resides here. By definition and common sense, a sovereign State resides in every place within its borders. Every court that has considered the Defendants' contrary argument, that a State resides only in its capital city, has rejected it. There is no reason for this Court to do differently.

Second, the Defendants did not establish that another district or division would clearly be more convenient for the parties and witnesses. Not a single one of the eight factors the Court must consider supports transfer. In particular, there is no reason to transfer the case to assuage the Defendants' imagined public interest against "judge shopping." The public's interest in impartial consideration of a case is preserved by statutes requiring recusal if a judge might reasonably be thought to be prejudiced against a party. The Defendants cannot back-door such an accusation by laundering Twitter posts, whispers, and suppositions into a "public interest" against filing a case in a particular division.

The motion to transfer should be denied.

## I. Venue is proper here because Texas resides here.

### A. Texas resides in this district.

One of the proper venues for a case against the federal government is a district where a plaintiff resides. 28 U.S.C. § 1391(e)(1)(c). Thus, the Northern District of Texas is a proper venue as long as the State of Texas resides here. Common sense and more than a century of precedent establish that it does.

That a state government "resides at every point within the boundaries of the state" has been the precedent of the Fifth Circuit for 130 years. *See Atlanta & F. Ry. Co. v. Western Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892). This may seem a basic, even obvious, point. The proposition is so commonsensical and well established that Wright & Miller flatly states: "Sometimes, cases to which Section 1391(e) applies are brought by states. A state is held to reside in any district within it." 14D Wright & Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022). Every federal court to have considered the Defendants' argument to the contrary—that Texas, for venue purposes, resides only in Austin—has rejected it in favor of the same conclusion that the Fifth Circuit did in the nineteenth century: A state resides at every point within its territory.

It is true enough that Section 1391(c) defines residency for certain entities for venue purposes. *See* 28 U.S.C. § 1391(c) (defining residency for "a natural person," "an entity with the capacity to sue and be sued . . . whether or not incorporated," and "a defendant not resident in the United States"). But that subsection does not purport to include every possible party to every possible action for venue purposes; its definition of "entity" is not a residuary receptacle into which sovereign States fall. Had Congress intended to encompass States within section 1391(c) at all, it would surely have made that clear.

The Defendants cite no cases to the contrary. Instead, they cite several cases regarding actions against individual public officials or courts (not States). ECF 10 at 6–7. Those cases are irrelevant. First, none of them involve venue under Section 1391(e), which makes venue appropriate in any district where a plaintiff resides. Second, each case involves public officials or courts as *defendants*—not a sovereign State as a *plaintiff*.

7

### B. The cases establish that Texas resides in this district.

The Ninth Circuit rejected the capital-city argument in *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), in which the federal government asserted that the State of California resided only in Sacramento. Not so, countered that court. The case had been properly brought in the Northern District of California rather than the Eastern District, which covers Sacramento, because a "state is ubiquitous throughout its sovereign borders." 911 F.3d at 570. A state was not "an entity" for purposes of the venue statute; that statute "explicitly refers to the incorporation status of the 'entity,' indicating that the term refers to some organization, not a state." *Id.* (quoting 28 U.S.C. § 1391(c)(2)). The statute itself reinforces that interpretation by distinguishing states from entities in the very next subsection. *Id.* (citing 28 U.S.C. § 1391(d)).

Similarly, Alabama was held to reside in the Northern District of Alabama, rather than just the Middle District, where Montgomery lies, in *Alabama v. Army Corps of Engineers*. The district court noted there that the absence of support for the federal governments' venue argument "may be precisely because common sense dictates that a state resides throughout its sovereign borders and the idea has not previously been challenged." 382 F. Supp. 2d 1301, 1328-29 (N.D. Ala. 2005).

Another district court rejected the Defendants' argument only last year, this time in a challenge—like this one—to a filing in a particular division. That court rejected the federal government's attempt to transfer a suit by the State of Florida from the Pensacola Division of the Northern District of Florida to the Tallahassee Division. *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022). Citing both the *Atlanta & F. Railway Co.* opinion from the Fifth Circuit and the *Azar* opinion from the Ninth Circuit, the court noted that the argument that Florida resided only in Tallahassee was "unpersuasive because it is

grounded in § 1391(c)(2), which governs the residency of corporations and other business organizations, not sovereign states." *Id.* at *2.

And yet another example: The Eastern District of Pennsylvania rejected an argument that the Commonwealth of Pennsylvania resided only in Harrisburg, in the Middle District of that state. *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 808– 09 (E.D. Pa. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020). That court held, like *Azar*, that Section 1391(c) does not "dictate the residency of sovereign States" because states do not have an incorporation status and Section 1391(d) distinguishes states from entities. *Id.* at 809. It further held that agreeing with the federal government would "yield an absurd result" that would "defy common sense" because, as *Azar* had held, a state is "ubiquitous throughout its sovereign borders[.]" *Id.* (quoting *Azar*, 911 F.3d at 570).

Consider an even more recent example: The Southern District of Texas acknowledged that it was bound by the same Fifth Circuit precedent cited here and found that "Texas resides at every point within the boundaries of this State, including the Victoria Division." *Texas v. U.S. Dept. of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2457480, at *3 (S.D. Tex. Mar. 10, 2023) . The court there reached this conclusion after determining that it was bound by the same Fifth Circuit precedent cited here and that "the Federal Defendants cite[d] no case to the contrary." *Id.* (citing *Atlanta & F. Ry. Co.*, 50 F. at 791).

These results are, contra the Defendants, in line with what Texas has argued elsewhere. They attempt to paint Texas as two-faced, pointing to a case, *City of El Cenizo v. Texas*, in which the State moved to transfer venue from San Antonio, where the plaintiff had sued, to Austin, where the state-official defendant performed his official duties. ECF 10 at 7 (citing No. 6:17-CV-404, 2017 WL 6402990, at *2–3 (W.D. Tex. Aug. 15, 2017)). That case, however, was not

governed by Section 1391(e), which specifically makes venue in a suit against a federal officer appropriate in any district where a plaintiff resides. More, that court concluded that the relevant consideration for the statutory basis for transfer was not the division in which the suit was filed—there has been no divisional venue statute in effect since 1988—but the district, which San Antonio and Austin share. 2017 WL 6402990 at *2. As the Western District was a proper venue, the only question was whether Austin was clearly more convenient than San Antonio, which the Court held the State had not established *See id.* at 2.

In line with binding precedent and the statute's purpose, Texas resides in the Northern District of Texas—and, for that matter, in the Lubbock Division. The Defendants thus have presented this Court with no cogent reason to depart from the precedents of each court that has ruled on this Section 1391(e) issue to date. Lubbock is a proper venue for the case, and the location of the State's capital does not change that.

## II. The Defendants have not demonstrated that another venue is clearly more convenient.

Because this is a proper venue, the case may be transferred only if another venue is clearly more convenient for the parties and witnesses. None of the eight private and public interest factors on which convenience is judged favors transfer; at the very least, the Defendants have not established the contrary. The Plaintiffs' choice of this venue must therefore be respected, and the motion to transfer should be denied.

### A. The private-interest factors weigh against transfer.

#### 1. The sources of proof are relatively easy to access.

This case largely centers on undisputed actions of the United States Congress and President; the inconsistency of those actions with the United States

10

Constitution and laws; and the appropriate remedies if the Defendants' actions are found unlawful. Accordingly, the case is unlikely to involve extensive and contested fact-witness testimony, determinations of witness credibility, or any sources of proof that are not reasonably available to all parties. Instead, all parties will have ready and full access to the primary source of proof: the public records that demonstrate that there was no quorum or valid vote by the House of Representatives on December 23, 2022, to pass the Consolidated Appropriations Act of 2023. That access exists regardless of whether the case proceeds in this District or elsewhere. As another bench of this Court held in denying a similar motion to transfer:

> [T]his case is about a nationwide policy with nationwide effect. Whether the agency action challenged in this case is lawful will not turn on facts and testimony found [in a particular place]. Rather, this case will turn on the administrative record . . . and the application of legal standards to agency action.

Appx. A (*Texas and Missouri v. Biden* (*Texas MPP*), No. 2:21-cv-00067, ECF 47 (N.D. Tex. June 3, 2021)) at 3–4. Indeed, as it further noted, the "'record rule' normally dictates that "the grounds on which an administrative order must be judged are those upon which the record discloses that its action was based." 554 F. Supp. 3d 818, 847 (N.D. Tex. 2021). This principle substantially limits the extent of testimony and other evidence the parties can present in this case.

Non-record evidence here would likely concern the Plaintiffs' standing, their injuries, and the scope of relief they should be afforded—each a long-recognized exception to the record rule. *See, e.g., Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1528 (9th Cir. 1997); *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989). Those witnesses, however, are likely to be under Texas's control. The Defendants did not identify a single witness or piece of evidence that would be easier to access were this case transferred elsewhere. (They mention the challenged

11

vote took place in Washington, D.C., but don't explain why that undisputed action will need to be proven by live witnesses.) Indeed, if history is any guide, the Defendants are unlikely to identify or call witnesses at all. When that other bench of the Court tried *Texas MPP* in 2021, the federal Defendants called no witnesses; neither did they call witnesses at the trial regarding the legality of the DHS "prioritization" policy in *Texas and Louisiana v. United States*, No. 6:21-cv-16 (S.D. Tex. 2022), last year. Their choice to identify no witnesses and no evidence in their motion to transfer here suggests that this case will be the same.

In any event, "[c]ourts do not afford significant weight to general allegations that a particular forum would be more convenient for unspecified witnesses. . . . Instead, parties must specifically identify each witness and provide an overview of their testimony[.]" *McNew v. C.R. Bard, Inc.*, No. 1:19-cv-195, 2020 WL 759299, at *2 (N.D. Tex. 2020) (Hendrix, J.) The Defendants have identified zero. In fact, they have identified no expected witnesses, no expected evidence, no expected subjects of testimony, and no specifics as to any other sources of proof. Without these specifics, they cannot establish that another venue is convenient, much less clearly more convenient under Section 1404(a). This factor weighs against transfer.

  **2. There is no evidence that compulsory process is needed to secure the attendance of witnesses.**

The Defendants identified no potential witnesses whose attendance they may need to secure. There is thus no evidence that they will need compulsory process to secure their attendance, nor is there evidence that costs will affect the attendance of witnesses for whom compulsory process is unnecessary. As the Court has observed, "parties must specifically identify each witness and provide an overview of their testimony[.]" *McNew*, 2020 WL 759299 at *2. And this is not an unfamiliar requirement to the Defendants. As the Court's other bench noted in denying the Federal Defendants motion to transfer, the Defendants "fail to specifically identify

any unwilling non-party witnesses in the transferee district or the substance of their testimony" and are "unable to specify individual witnesses who would have to travel." *See* Appx. A at 5. The same fatal deficiencies are present here.

### 3. There is no evidence that costs will prevent willing witnesses from attending.

As with the other witness factors, Defendants retreat to generalities and speculation rather than furnish specifics. Further, the thrust of their argument for transferring to Austin is that the Attorney General's principal office and the State's counsel. ECF 10 at 11–12. Counsel's location, however, is irrelevant to a motion to transfer under Section 1404(a). *See e.g.*, *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 206 (5th Cir. 2004); *David v. Girardi*, No. 3:23-cv-0108, 2023 WL 1110303, at *2 (N.D. Tex. Jan. 27, 2023). The Defendants thus gain no support for their requested transfer from this factor. This factor instead favors Texas.

### 4. There is no evidence relevant to the catchall factor.

The final private interest factor "is the catchall of all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen I*, 371 F.3d at 203. The Defendants identify none. In fact, the Defendants make no contentions about this factor; they only cursorily address the private interest factors. *See* ECF 10 at 11–12. As discussed below, however, the lack of congestion in this Court suggests that retaining the case here will, as a practical matter, be significantly easier, more expeditious, and less expensive than transferring it. To the extent those concerns are private, as well as public, factors, they counsel against transfer.

### B. The public-interest factors weigh against transfer.

#### 1. This division is less congested than the courts and divisions the Defendants suggest.

This public interest factor strongly favors keeping this case here. The Defendants raise no argument about court congestion, likely because there is no plausible claim that transferring this case to the District of Columbia or to the Austin Division in the Western District of Texas would avoid administrative difficulties flowing from court congestion. To the contrary, such a transfer would *add* difficulties from court congestion.

The most recent statistics from the Administrative Office of the U.S. Courts confirm that this Court, and this bench of the Court in particular, is likely to try this case more swiftly than either court the Defendants propose. The median time from commencement of a civil suit to trial in the Northern District of Texas for the twelve months ending September 30, 2022, was 24.1 months. This is in contrast to 28.9 months for the Western District of Texas (20% higher) and 49.9 months for the District of Columbia (107% higher). Admin. Off. of U.S. Courts, *Federal Court Management Statistics—Profiles* (Sep. 30, 2022) (available at https://www.uscourts.gov/file/62591/download).

More importantly, the bench of this Court has a record of prompt and efficient disposition of cases. As of the most recent reporting data, this Court had no motions pending for more than six months and no cases pending longer than three years.[1] The same cannot be said for the district courts in the Austin Division of the Western District of Texas or the District of Columbia. Specifically, the Austin Division had 16 cases pending over three years and 5 motions pending for more than six months. Meanwhile, the Western District of Texas, as a whole, had 61 cases pending over

---

[1] Statistics from Admin. Off. of U.S. Courts, *Civil Justice Report Act Report*, Tables 7 & 8 (Sep. 30, 2022), https://www.uscourts.gov/file/62864/download.

three years and 401 motions pending over six months. Similarly, twenty-four of the United States District Judges in the District of Columbia had 557 cases pending over three years and, as a whole, the District of Columbia had 342 motions pending more than six months.

Based on these statistics, the Defendants' requested transfer would create, not solve, court-congestion problems. This factor weighs against transfer.

### 2. This case presents a local issue that is appropriate to decide here.

When assessing this public interest factor, courts examine whether there is "a relevant factual connection between the events and the venue" and "those actually affected—directly or indirectly—by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318. Because this case focuses on federal legislation that was never constitutionally adopted that has nationwide effects, it is not explicitly or closely tied to any one district or division.

But that does not mean that the dispute is divorced from Lubbock. Citizens of Lubbock (and the division in which it sits) are as offended and affected by the purported, unconstitutional appropriation of $1.7 trillion of public funds as citizens in any other district. Plus, the Lubbock Division of this District is largely represented in the House of Representatives by Rep. Jodey Arrington—the new Chairman of the House Budget Committee—who voted in person against the challenged act on December 23, 2022. *See* Clerk, United States House of Representatives, Roll Call No. 549 for H.R. 2617 (Dec. 23, 2022), https://clerk.house.gov/Votes/2022549.

The people of this division have an interest in having the matter resolved in this division that is, at the very least, no less tangible than any other venue the Defendants have proposed. This factor weighs against transfer.

### 3. The Court is familiar with the governing law.

The Defendants do not assert that the federal judges in Austin or Washington are more familiar with the governing law than is this Court. All federal district judges are presumed familiar with and equally capable of interpreting the federal law applicable in this case. *See, e.g.*, *Mateos v. Montemayor*, 919 F. Supp. 2d 817, 825 (W.D. Tex. 2013) (citing *Hidden Values, Inc. v. Sandoval*, No. 3:09-cv-34, 2009 WL 10677477, at *6 (N.D. Tex. June 26, 2009)). Accordingly, this factor is neutral and does not support the requested transfer.

### 4. There are no conflict-of-laws problems.

Federal law governs this case. No one suggests otherwise. This factor is thus neutral.

The private and public interest factors *all* either are neutral or weigh against the requested transfer. Accordingly, the Defendants' motion should be denied.

## III. The Defendants' attempt to dictate the forum must be rejected.

Section 1404(a) "was not designed to narrow the plaintiff's venue privilege," but to "counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court." *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964). The Defendants' concern, however, is not inconveniences and their amelioration; as they forthrightly concede, their real concern is forum shopping. But "forum shopping" arguments have "no real relation to the interest of justice analysis unless [an] alternative motion," such as for recusal, "has merit"—and such a motion is meritless if the defendants "do[] not alleg[e] that the assigned presiding judge is biased in favor of the Plaintiffs[.]" *James v. Experian Info. Sols., Inc.*, No. 3:12-cv-902, 2014 WL 29041, at *5 (E.D. Va. Jan. 2, 2014). That is because forum-shopping concerns, particularly in the Fifth Circuit, are already rolled into the transfer analysis by giving the plaintiff's choice of forum no weight

16

of its own and simply holding the defendant to Section 1404's burden to show "good cause" for transferring the case—that is, by requiring the defendant to show that another permissible venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 315 (quoting *Humble Oil & Refining Co. v. Bell Marine Serv.*, 321 F.2d 53, 56 (5th Cir. 1963)); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (under Fifth Circuit precedent, "plaintiff's choice of venue corresponds to the burden that a moving party must meet" under Section 1404).

The Defendants spend no almost no effort to justify a transfer under the standards governing Section 1404. That scantiness is no accident; they seek a precedent stating that sufficient stridency about a plaintiff's motivation for choosing a forum entitles them to a transfer. They couch this in more pleasant terms—that the "public's interest in the fair administration of justice would be harmed if a filing with strong indicia of judge shopping were left unchecked," ECF 10 at 12—but they quickly back away from even that, instead asserting there might be a "public perception of unfairness," rather than actual unfairness, and that the mere filing of this suit might "give rise to a public perception that Texas is trying to 'shop for a friendly forum[.]'" *Id.* at 12 & n.7. Their sole ground for that speculation is that potential harm is that other people have raised the same speculation. Lacking supporting precedent or supporting evidence, they finally complain that Texas has not explained itself sufficiently to satisfy them. ECF 10 at 12. That is not Texas's burden. It chose a proper forum—one where its offices are located, and where its attorneys regularly work, as they do throughout the State. It is the Defendants who must demonstrate that Texas's choice was *un*justified—a demonstration they barely try to make.

Congress delegated to each district court's chief judge to "divide the business and assign the cases" if the "court [has] more than one judge." 28 U.S.C. § 137(a). It expressly gave plaintiffs ability to challenge Executive Branch actions in courts all

17

over the nation—not only in the District of Columbia, where venue had been almost mandatory. *Cf. Minn-Dak Farmers Co-op. v. Espy*, 851 F. Supp. 1423, 1425 (D.N.D. 1994) (requiring "each and every plaintiff with a cause of action against a governmental officer located in Washington, D.C. to travel to that city to plead his or her case . . . would exalt the federal officer or employee above the citizens he is bound to serve"). If the Defendants don't like it, they should ask Congress to change its mind. Until then, they must demonstrate that Lubbock is either an improper venue or is clearly less convenient—for the administration of justice, not for the Department of Justice—than an alternative. They have barely tried to do so. Their motion should be denied.

## Conclusion

The State of Texas respectfully requests that the motion to transfer venue be denied.

Dated March 20, 2023.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Grant Dorfman
Deputy First Assistant Attorney General

Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

Aaron F. Reitz
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105704
aaron.reitz@oag.texas.gov

Leif A. Olson
Chief, Special Litigation Division
Texas Bar No. 24032801
leif.olson@oag.texas.gov

J. Aaron Barnes
Special Counsel
Texas Bar No. 24099014
aaron.barnes@oag.texas.gov

*/s/ Ethan Szumanski*
Ethan Szumanski
Assistant Attorney General
Texas Bar No. 24123966
ethan.szumanski@oag.texas.gov

Texas Public Policy Foundation
901 Congress Ave.
Austin, Texas 78701
(512) 472-2700

Robert Henneke
Texas Bar No. 24026058
rhenneke@texaspolicy.com

Chance Weldon
Texas Bar No. 24076767
cweldon@texaspolicy.com

Matthew Miller
Texas Bar No. 24046444
mmiller@texaspolicy.com

Nate Curtisi
Arizona Bar No. 033342
ncurtisi@texaspolicy.com

**Counsel for the State of Texas**

## C ERTIFICATE OF S ERVICE

I certify that on March 20, 2023, this opposition was filed through the Court's CM/ECF system, which served it upon all counsel of record.

*/s/ Ethan Szumanski*