IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **STATE OF TEXAS**, Plaintiff, v. **MERRICK GARLAND**, in his official capacity as Attorney General, *et al.*, Defendants. | Case No. 5:23-cv-00034-H |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO TRANSFER VENUE**

**INTRODUCTION**

Texas originally cited two bases for filing suit here: that a substantial part of the events at issue occurred here and that it resides here. Texas has rightly abandoned the first argument. As to the second, Texas's argument is untethered from the text of 28 U.S.C. § 1391. That provision defines residency "[f]or all venue purposes." Texas does not dispute that, using any of the residency definitions found in § 1391, it does not reside here. Texas nonetheless invites the Court to rewrite the statute's plain text based on "common sense." Such an attempt to abandon the traditional tools of statutory interpretation should be rejected. Grafting unwritten provisions on to § 1391's plain text is particularly unwarranted here where it would facilitate Texas's pattern of apparent judge-shopping by filing cases against the federal government in divisions with few judges and that have no connection to the underlying claim. Texas attempts to justify its conduct by painting Defendants' transfer motion as an attack on this Court's impartiality. But, as previously stated, Defendants "are not questioning this Court's ability to decide the case fairly." Mem. 12 n.4. Because venue is improper here, and because, even if it were proper, the public and private factors support transfer, the Court should transfer this case to the District of Columbia or the Austin Division of the Western District of Texas.

**ARGUMENT**

**I.   Venue Is Improper in this District under 28 U.S.C. § 1406.**

Texas pled that venue is proper in the Northern District of Texas because "a substantial part of the events or omissions giving rise to its claim occurred here," Am. Compl. ¶ 17, but Texas abandoned that claim in its brief, *see generally* Opp. And for good reason: *no* events giving rise to Texas's claim concerning the passage of the Act occurred in this district, let alone a "substantial part." *See* 28 U.S.C. § 1391(e). Texas now argues only that venue is proper in this district because the State is located in all the districts within Texas. *See* Opp. 6–10; Am. Compl. ¶ 17. Texas is incorrect.

The State's argument is untethered from § 1391's text. In "matters of statutory interpretation,

text is always the alpha." *In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019). And the text here is clear. Section 1391(e)(1) allows suits against the United States and its agencies to be brought in one of three locations: where "a substantial part of the events" giving rise to the claim occurred, "a defendant in the action resides," or "the plaintiff resides if no real property is involved." 28 U.S.C. § 1391(e)(1). Accordingly, Texas could have sued in Washington, D.C., where the challenged law was enacted, or where either a defendant or the plaintiff "resides."

Residency is a defined term. Section 1391(e) defines residency "[f]or all venue purposes": (1) natural persons "shall be deemed to reside" where they are "domiciled", (2) a "defendant not resident in the United States" is deemed to reside "in any judicial district," and (3) "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated" "shall be deemed to reside," if a plaintiff, "only in the judicial district in which it maintains its principal place of business." *Id.* § 1391(c). Texas acknowledges that § 1391(c) "defines residency" for venue, but argues—unsupported by the text—that the section only defines residency "for certain entities" and "does not purport to include every possible party to every possible action for venue purposes." Opp. 7. That argument flaunts basic rules of statutory interpretation. For one, the State's argument rewrites the meaning of the word "all," which is "comprehensive" and "means precisely what it says." *Lion Oil Co. v. Gulf Oil Corp.*, 181 F.2d 731, 734 (5th Cir. 1950); *Texaco, Inc. v. Pigott*, 235 F. Supp. 458, 464 (S.D. Miss. 1964), *aff'd*, 358 F.2d 723 (5th Cir. 1966) ("all" "is about the most comprehensive and all inclusive word in the English language"). For another, "[w]hen a statute includes an explicit definition, [a court] must follow that definition, even if it varies from that term's ordinary meaning." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000). "It is axiomatic that the statutory definition of the term excludes unstated meanings of that term." *Meese v. Keene,* 481 U.S. 465, 484–485 (1987). Thus, the State's residency must be governed by § 1391's specific residency definitions.

The question, then, is which of § 1391's residency definitions applies. Texas says none of

them: it is not, as Defendants acknowledge, a natural person or "a defendant not resident in the United States," and, according to Texas, it is not "an entity" within the meaning of § 1391(c)(2). But if Texas is right—that it cannot establish that it "resides" in this district as that term is defined in § 1391—that means only that venue is not proper here, and therefore Defendants' § 1406 motion should be granted.

Defendants, meanwhile, maintain that Texas can establish its residency pursuant to § 1391(c)(2) as "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated." Congress did not define "entity" so the term should be "interpreted in accordance with [its] ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). The ordinary meaning of "entity," supported by both legal and popular dictionary definitions, is broad and covers States. *See Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 (5th Cir. 2014) (looking to the "ordinary meaning" of words not defined in a statute and consulting "popular and legal" dictionaries). An "entity" is "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners." Entity, Black's Law Dictionary (11th ed. 2019); *see also* Entity, American Heritage Dictionary of the English Language, https://perma.cc/7VZH-42T7. And a "state," which is defined as "[a]n institution of self-government within a larger political entity; esp., one of the constituent parts of a country having a federal government," falls within this broad definition. State, Black's Law Dictionary (11th ed. 2019); *see also* State, American Heritage Dictionary of the English Language, https://perma.cc/3BUG-GBCF. Congress has repeatedly defined "entity" to include government entities, including States, providing further evidence Congress did not through silence in section 1391(c)(2) mean for "entity" to somehow exclude State plaintiffs from its coverage.[1] *See, e.g.*, 2 U.S.C. § 1602(14) ( "entity" includes

---

[1] In another case, Texas has recognized that governmental units are considered "entities" for venue purposes by discussing the residency of the City of San Antonio in a paragraph concerning the residency of "entities" under 28 U.S.C. § 1391(c). *See* Texas's Mem., *City of El Cenizo v. Texas*, 5:17-cv-404, ECF No. 32-1, at 3 (W.D. Tex., filed June 8, 2017).

3

"State or local government"); 11 U.S.C. § 101(15) ("entity" includes "governmental unit"); 18 U.S.C. § 2711(4) ("governmental entity" includes "any State"); 15 U.S.C. § 3802(c) ("public entities" are "any unit or units of State and/or local governments"); 42 U.S.C. § 12131 (similar); 21 U.S.C. § 2011(4) ("qualified entity" includes "a State . . . government").  Accordingly, for venue purposes, a State is an "entity" that, when it is a plaintiff, resides "only in the judicial district in which it maintains its principal place of business," 28 U.S.C. § 1391(c)(2)—here, the Western District of Texas.

Texas does not grapple with this unambiguous text and instead relies on cases that erroneously interpreted 28 U.S.C. § 1391 or resorted to "common sense" to rewrite clear statutory text.  Opp. 8–9 (citing *California v. Azar*, 911 F.3d 558 (9th Cir. 2018); *Alabama v. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301 (N.D. Ala. 2005); *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022); *Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020); *Texas*, 2023 WL 2457480).  But, as explained, the issue here is controlled by the statutory text, not vague notions of "common sense" found nowhere in the statute.  *See Gen. Motors Corp. v. EPA*, 871 F.2d 495, 504 (5th Cir. 1989) (noting that it is "crucial that the language of the [statutory] text explicitly requires what common sense suggests"); *Ironridge Glob. IV, Ltd. v. SEC*, 146 F. Supp. 3d 1294, 1310–11 (N.D. Ga. 2015) (finding that the SEC's argument that a "natural reading" of the venue statute excludes federal agencies "is foreclosed by the plain and ordinary meaning of the venue statute").

The Ninth Circuit's reasoning in *California*, on which several of the cases Texas cites relied, was erroneous in several respects.  First, the Ninth Circuit found that the word "entity" pertains only to organizations without considering that this interpretation renders the word "all" in "[f]or all residency purposes" a nullity.  *See California*, 911 F.3d at 569–70; *see also Florida*, 2022 WL 2431443, at *2; *Pennsylvania*, 351 F. Supp. 3d at 809.  Stated differently, the Ninth Circuit's interpretation of the venue statute changes the definition of "residency" "[f]or all venue purposes" to "for all venue

4

purposes, except for States, which are deemed to reside in any district within their borders." But courts "are not free to rewrite the statutory text." *McNeil v. United States*, 508 U.S. 106, 111 (1993). Next, the Ninth Circuit found that the "statute explicitly distinguishes between states and entities" by referencing an "entity" in section 1391(c) and "States" in section 1391(d). *California*, 911 F.3d at 570; *see also Pennsylvania*, 351 F. Supp. 3d at 809. But section 1391(d) merely refers to a "State" in the geographic sense, not in the party sense, and in no way implies that when a State is a party, it is not an "entity." Moreover, section 1391(d) focuses on the residency of one particular class of entity defendants: corporations located in States with more than one judicial district. But corporate plaintiffs, just like State plaintiffs, reside only in "the" judicial district containing their "principal place of business." 28 U.S.C. § 1391(c)(2). Thus, using the words "States" and "corporations" in section 1391(d) does not mean that they are not "entities" when they are plaintiffs.

The Ninth Circuit also turned to the statute's legislative history, *see California*, 911 F.3d at 570; *see also Pennsylvania*, 351 F. Supp. 3d at 809, but courts "do not resort to legislative history to cloud a statutory text that is clear," even when there are "contrary indications," *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994), or "silence in the legislative history," *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018). In any event, the Ninth Circuit and other courts ignored the legislative history indicating Congress's purpose of ensuring that the venue provisions would apply "universally" and would apply to "a corporation, an unincorporated association, and any other entity that has the right to sue and be sued in its common name." H.R. Rep. No. 112-10, at 20–21 (2011). If Congress only was intending to make consistent the residency status of corporations and unincorporated associations, as the Ninth Circuit suggested in *California v. Azar*, it could have done so. But Congress chose to speak more broadly, both in the statute and in the legislative history, to ensure that the residency definition applies to "any entity that has a right to sue and be sued in its common name." *Id.*; *see also id.* at 22 (explaining that the new § 1391(c)(2) applies to "unincorporated associations, such

5

as partnerships and labor unions, *and* other entities with capacity to sue in their common name under applicable law") (emphasis added). Thus, "[e]ven if Congress did not foresee all of the applications of the statute, that is no reason not to give the statutory text a fair reading." *Encino Motorcars*, 138 S. Ct. at 1143. A "fair reading" of 28 U.S.C. § 1391 would include a State plaintiff as an "entity."

Finally, relying on dicta from *Atlanta & F.R. Co. v. Western Railway Co. of Alabama*, 50 F. 790, 791 (5th Cir. 1892), Texas contends that venue is proper in this district, notwithstanding § 1391(c), because a "state resides at every point within its territory." Opp. 7. But *Atlanta* did not concern suit by or against a state governmental entity and did not purport to address where a state government resides for venue purposes. *See* 50 F. at 791. And even were it not dicta, *Atlanta* precedes the modern amendments to the venue statute by decades, and thus has been superseded by the venue statute, which defines "residency" "[f]or all venue purposes." 28 U.S.C. § 1391(c). Crucially, none of the cases that relied on *Atlanta* to find that a State resides in every district addressed this fact. *See, e.g.*, *Utah v. Walsh*, No. 2:23-CV-016-Z, 2023 WL 2663256, at *3 (N.D. Tex. Mar. 28, 2023); *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-cv-00007, 2023 WL 2457480, at *3 (S.D. Tex. Mar. 10, 2023).

## II.    Transfer is Warranted under 28 U.S.C. § 1404.

Texas does not dispute that this case "might have been brought" in the District Court for the District of Columbia or in the Austin Division of the Western District of Texas. Instead, Texas argues that "the case may be transferred only if another venue is clearly more convenient for the parties and witnesses." Opp. 10. But when the Court accounts for "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice,'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988), it is plain that transfer is warranted.

As for the private interest factors, while two of the factors are neutral, the two concerning documentary evidence and the cost of attendance for willing witnesses support transfer. Texas has identified no witnesses located in Lubbock or this district. *See* Opp. 11. Defendants, meanwhile,

6

have identified witnesses at various agencies in the Washington, D.C. area who will, in declarations at the motion to dismiss stage and at trial if the case proceeds beyond that, be used in support of their jurisdictional arguments. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Requiring those witnesses to travel more than 1,000 miles to Lubbock would mean significant travel time "away from their regular employment." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004) (witness travel more than 100 miles supports transfer). Documents, including those relevant to standing declarations and the enactment of the challenged Act, are also located in the Washington, D.C. area. Accordingly, while two private interest factors are neutral, the other two weigh in favor of transfer.

While the public interest factors concerning a conflict of laws or familiarity with the law are inapplicable, and thus neutral, the other two enumerated factors concerning the local interest in this case and court congestion lean in favor of transfer. Texas asserts that "[t]his case presents a local issue that is appropriate to decide here." Opp. 15. Far from it. As this Court has stated, "[t]he local interest factor generally favors the venue where the acts giving rise to the lawsuit occurred." *McNew v. C.R. Bard, Inc.*, No. 1:19-CV-195-H, 2020 WL 759299, at *3 (N.D. Tex. Feb. 14, 2020) (quotation omitted). Texas alleges that the "[c]itizens of Lubbock . . . are as offended and affected by the purported, unconstitutional appropriation of $1.7 trillion of public funds as citizens in any other district." Opp. 15. Even if that were true, this statement admits that the citizens of Lubbock have no particular local interest in the outcome of this dispute. Texas also points to the fact that one of the members who represents the Lubbock Division voted in person against the challenged legislation.[2] *Id.* But the fact

---

[2] This allegation does not mean that Representative Arrington or his constituents objected to proxy voting, as Texas implies. Representative Arrington designated a proxy to cast his vote for other matters. *See* https://clerk.house.gov/legislative/proxy-letters/117/2/20220519/Arrington-TX19-20220519.pdf. And Representative Ronny Jackson, who also represents Texans living in the area served by the Lubbock Division, *see* 28 U.S.C. § 124(a)(7), voted by proxy on the Act, *see* Clerk, U.S. House of Representatives, Members Recorded Pursuant to H.R. Res. 8, 117th Cong., Roll Call 549 (Dec. 23, 2022), https://perma.cc/4Q98-Y73G.

that Representative Arrington voted in Washington, D.C.—where Texas alleges the unconstitutional acts occurred—only lends support to transferring the matter to the District of Columbia.[3]

As to court congestion, "courts often consider the median time interval from case filing to disposition." *Bennett v. Moran Towing Corp.*, 181 F. Supp. 3d 393, 401 (S.D. Tex. 2016). Relying on outdated statistics concerning the median time from commencement of a civil suit to a *jury* trial, which is inapplicable here, Texas contends that this Court is "likely to try the case more swiftly" than either proposed transferee forum.[4] Opp. 14. But more current, comprehensive data concerning civil case disposition reflect that the median time from commencement of suit to disposition in the District of Columbia is 5.0 months and in the Western District of Texas is 7.9 months, whereas the median time in the Northern District of Texas is 55.1 months.[5] *See* U.S. District Courts—Median Time From Filing to Disposition of Civil Cases, by Action Taken—During the 12-Month Period Ending December 31, 2022, https://www.uscourts.gov/file/63291/download. This factor supports transfer.

As the Fifth Circuit has recognized, the eight factors "are not necessarily exhaustive or exclusive." *Volkswagen*, 545 F.3d at 315. Here, the Court also should consider the appearance of judge-shopping that Texas has created by its practice of filing cases against the federal government in certain divisions that have one or few judges. *See* Appx. 1 (chart showing suits filed by Texas against the federal government). Although Texas asserts that such appearance is predicated on mere

---

[3] In a case involving a facial challenge to a state law, Texas argued that transfer under section 1404(a) was warranted in part because the law "was passed and signed into law in Austin." *See* Texas's Mem., *City of El Cenizo v. Texas*, 5:17-cv-404, ECF No. 32-1, at 12 (W.D. Tex., filed June 8, 2017).

[4] Texas also erroneously cites to statistics regarding dispositions in appellate courts. *See* Opp. 14 (citing http://www.uscourts.gov/file/62591/download). The statistics Texas references in its brief are found at the following website: https://www.uscourts.gov/file/62234/download.

[5] While Texas notes that this Court has no motions pending for more than six months, *see* Opp. 14, that is also true for 10 judges who sit in the District of Columbia and the vast majority of judges in the Western District of Texas, *see* U.S. District Courts—Report Of Motions Pending Over Six Months As of September 30, 2022, http://www.uscourts.gov/file/62864/download. Moreover, only five motions have been pending for longer than six months in the Austin Division. *See id.*

"speculation," Opp. 17, Texas itself has left little doubt as to its intentions. The Office of the Attorney General of Texas recently admitted that it filed a case in the Victoria Division of the Southern District of Texas expressly to ensure that it would be heard by Judge Drew Tipton, who was the only judge in that Division at the time the complaint was filed. *See* Pls.' Ex. A, *Utah v. Walsh*, No. 2:23-cv-16 (N.D. Tex. Feb. 28, 2023), ECF No. 55-1 (Tr. 45:22–46:3, *Texas v. Dep't of Homeland Security*, No. 6:23-cv-00016 (S.D. Tex. Feb. 21, 2023)) ("The case is being filed in Victoria, quite frankly, Your Honor, because of our experience with you."). And legal experts and commentators have likewise remarked on Texas's practice of filing cases in certain divisions, often ones that have no connection to the forum, during multiple presidential administrations.[6]

Defendants recognize that Judge Tipton recently denied the government's motion to transfer pursuant to § 1404, which the government argued was necessary to combat the public perception of judge-shopping. *See Texas*, 2023 WL 2457480. Defendants respectfully contend that motion was incorrectly decided. The court there reasoned that "[a]ll parties agree that this Court will preside fairly and impartially," and "it is not appropriate to transfer a case that is in the proper venue due to an alleged public perception of bias that conflicts with the perception of the Parties in the case." *Id.* at *8. But it is the perceived ability to select a particular judge that undermines public trust, not the perceived beliefs of the selected judge. And there can be no doubt that "public confidence" is "essential" to the judiciary. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982); Chief Justice John G. Roberts, 2021 Year-End Report on the Federal Judiciary (Dec. 31, 2021), https://perma.cc/TZ5A-KHUC (describing the practice of judge-shopping in the patent context and its impact on "public confidence" in the courts).

---

[6] *See, e.g.*, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58, at 4–19 (Sept. 19, 2022), https://perma.cc/5J3Z-Y4U6; Britain Eakin, "Judge-Shopping Texas Needs Albright Scrutiny, Experts Say," LAW360 (Feb. 3, 2023), https://perma.cc/6A47-W3XE; Alex Botoman, Divisional Judge-Shopping, 49 Colum. Hum. Rts. L. Rev. 297, 298–308 (2018).

Defendants also acknowledge that Judge Kacsmaryk likewise denied a motion to transfer. *Utah*, 2023 WL 2663256, at *7. That court found that "none of the [eight enumerated] factors weigh in favor of transfer" and declined to "weigh in on the merits of Defendants' judge-shopping argument or create new law to address it." *Id.* at *6. But no "new law" needs to be created, as the Fifth Circuit has stated that the eight factors "are not necessarily exhaustive or exclusive," *Volkswagen*, 545 F.3d at 315, and the Supreme Court has previously considered "gamesmanship" and "opportunities for forum shopping" in considering whether transfer is appropriate under section 1404(a), *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 65 (2013). Moreover, several courts have issued rulings to combat judge-shopping in instances where plaintiffs' conduct demonstrated efforts to manipulate the system to obtain a judge of their choice even where there was no allegation of bias. *See, e.g.*, *Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69, 72–73 (D.P.R. 2004); *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999); *Steward v. Dow Corning Corp.*, No. 92-cv-1105, 1992 WL 75195, at *2 (D. Kan. Mar. 13, 1992); *Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, No. 21-cv-597, 2021 WL 4504245, at *6 (S.D. Ohio Sept. 30, 2021). Similarly here, where a State repeatedly sues the federal government in particular divisions that have no connection to the underlying merits of the case—and avoids litigating in the courthouse down the street from its own Attorney General's office—the interests of justice counsel in favor of transfer under § 1404 to maintain confidence in the legal system. Allowing this practice to continue without response will contribute to the "perception that different forms of justice [are] available to litigants, depending upon the division in which a suit was filed." *In re Gibson*, 423 F. App'x 385, 388 (5th Cir. 2011).

## CONCLUSION

For the reasons articulated herein and in Defendants' Motion to Transfer Venue, the Court should transfer this action either to the U.S. District Court for the District of Columbia or to the Austin Division of the U.S. District Court for the Western District of Texas.

Dated: April 3, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director, Federal Programs Branch

LESLEY FARBY
Assistant Branch Director

*/s/ Michael J. Gaffney*
COURTNEY D. ENLOW (N.C. Bar No. 46578)
Senior Trial Counsel
MICHAEL J. GAFFNEY (D.C. Bar No. 1048531)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-2356
Fax: (202) 616-8470
Email: michael.j.gaffney@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2023, I electronically filed the foregoing paper with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of such filing.

>/s/ Michael J. Gaffney
MICHAEL J. GAFFNEY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 514-2356
Fax: (202) 616-8470
Email: michael.j.gaffney@usdoj.gov