UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br>　　*Plaintiff*,<br>v.<br>MERRICK GARLAND, *et al.*,<br>　　*Defendants*. | No. 5:23-cv-34-H |

**TEXAS'S MOTION TO EXCLUDE DEFENDANTS' EXHIBITS 2, 3, 4, 7, 8, 11, AND 15**

# EXHIBIT A

DEFENDANTS' EXHIBIT

DX-002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

**STATE OF TEXAS**,

                Plaintiff,

v.

**MERRICK GARLAND**, in his official capacity as Attorney General, *et al.*,

                Defendants.

Case No. 5:23-cv-00034-H

**DECLARATION OF CAROL R. MIASKOFF**

Pursuant to 28 U.S.C. § 1746, I, Carol R. Miaskoff, declare the following to be a true and correct statement of facts:

1. I have been an employee of the U.S. Equal Employment Opportunity Commission (EEOC) continuously since November of 1992. In June of 2021, I was appointed by the EEOC Chair to serve as the Legal Counsel, heading the agency's Office of Legal Counsel, a position I previously held in an acting capacity beginning in February of 2021. From November 2017 until February 2021, I was an Associate Legal Counsel, and before that I served in a number of supervisory roles in the Office of Legal Counsel, including Acting Associate Legal Counsel; Assistant Legal Counsel for the Title VII, ADEA, and EPA Division; and Assistant Legal Counsel for the Coordination Division.[1]

2. One of the responsibilities of the Office of Legal Counsel is to coordinate the process of promulgating agency regulations, a process that includes, among other things, drafting of proposed regulations, publication in the *Federal Register* of notices of proposed

---

[1] In my titles, "Title VII" refers to Title VII of the Civil Rights Act of 1964, "ADEA" refers to the Age Discrimination in Employment Act of 1967, and "EPA" refers to the Equal Pay Act of 1963.

rulemaking, and review and analysis of public comments in connection with formulating a final rule.

3. The Pregnant Workers Fairness Act (PWFA) was signed into law on December 29, 2022, and became effective on June 27, 2023. The PWFA specifically requires the EEOC to promulgate regulations to implement the Act.[2] In 2023, as Legal Counsel, I oversaw the drafting and publication of a notice of proposed rulemaking (NPRM) to implement the PWFA. The NPRM was published in the *Federal Register* on August 11, 2023.[3]

4. Among other provisions, the PWFA makes it unlawful for a covered entity to "not make reasonable accommodations to the known limitations related to pregnancy, childbirth, or related medical conditions of qualified employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[4]

5. The PWFA was intended to address gaps in the coverage of other federal statutes, including Title VII of the Civil Rights Act of 1964 (Title VII), as amended by the Pregnancy Discrimination Act of 1978.[5] Title VII protects employees from discrimination based on sex, including "pregnancy, childbirth, or related medical conditions," and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work."[6] Under Title VII, among other

---

[2] 42 U.S.C. § 2000gg-3(a).
[3] Regulations To Implement the Pregnant Workers Fairness Act, 88 Fed. Reg. 54,714, (proposed Aug. 11, 2023) (to be codified at 29 CFR pt. 1636) [hereinafter PWFA NPRM].
[4] 42 U.S.C § 2000gg-1(1).
[5] H.R. Rep. No. 117–27, pt.1, at 14–16 (2021) (describing court rulings under Title VII and the Supreme Court's decision in *Young* v. *United Parcel Serv., Inc.,* 575 U.S. 206 (2015)).
[6] 42 U.S.C. § 2000e(k).

2

protections, an employee affected by pregnancy, childbirth, or related medical conditions is entitled to accommodations under certain circumstances.[7] The NPRM and other EEOC documents discuss how Title VII and the PWFA can overlap, or not, depending upon the circumstances.[8]

6. The NPRM also explains how the EEOC expects the process for a reasonable accommodation will work under the PWFA. First, under the proposed rule, a worker will make a request to their employer.[9] Many of the accommodations that workers will seek under the PWFA will be simple, like additional bathroom breaks or the ability to carry water with them while working. If the accommodation is a simple one, the EEOC expects it will be granted easily and quickly. If the employer needs more information, the worker and the employer can engage in the "interactive process," which is a term from the Americans with Disabilities Act.[10] The interactive process is an informal exchange of information to help the worker and the employer figure out a reasonable accommodation.[11] The employer does not have to provide the accommodation if it would cause an undue hardship.[12]

7. To the extent a worker believes after engaging in the interactive process that the employer has failed to provide a reasonable accommodation, a worker may file a charge with the EEOC. Section 104[13] sets out that the PWFA uses the same charge procedures as

---

[7] *See, e.g., Young* v. *United Parcel Serv., Inc.,* 575 U.S. 206, 229 (2015).
[8] PWFA NPRM, 88 Fed. Reg. at 54,714-15; EEOC, *What You Should Know about the Pregnant Workers Fairness Act,* Q. 3 & 7, available at https://www.eeoc.gov/wysk/what-you-should-know-about-pregnant-workers-fairness-act; EEOC, *Enforcement Guidance on Pregnancy Discrimination*, I(C) (June 25, 2015), available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-pregnancy-discrimination-and-related-issues.
[9] PWFA NPRM, 88 Fed. Reg. at 54,722.
[10] 42 U.S.C. § 2000gg(7); PWFA NPRM, 88 Fed. Reg. at 54,735.
[11] PWFA NPRM 88 Fed. Reg. at 54,735 (setting out possible steps for the interactive process under the PWFA).
[12] 42 U.S.C. § 2000gg-1(1).
[13] 42 U.S.C. § 2000gg-2(a)(1).

Title VII. Thus, under the PWFA, a worker can file a charge with the EEOC, the EEOC will provide the employer notice of the charge being filed, and the EEOC will use the same steps it uses to process a Title VII charge.

8. As a result of the overlap between Title VII and the PWFA, a worker may file a charge under either or both statutes based on the same set of facts. Such charges would use the procedures set out in Title VII, which, as noted in paragraph 7 above, the PWFA incorporates by reference. Likewise, should a lawsuit be filed based upon one of these charges – under Title VII, the PWFA, or both statutes – the procedures in Title VII, as adopted by the PWFA,[14] would apply there as well.

9. As stated in the NPRM, the Office of Management and Budget's (OMB) Office of Information and Regulatory Affairs (OIRA) determined that the rulemaking was significant for purposes of Executive Order (E.O.) 12866. Therefore, the EEOC completed and included in the NPRM an Initial Regulatory Impact Analysis (IRIA) as required by E.O. 12866 and E.O. 13563, as amended by E.O. 14094.[15]

10. In completing the IRIA, the EEOC adhered to the requirements of Executive Orders 12866 and 13563 and OMB Circular A-4,[16] and followed OIRA's published guidelines for completing a regulatory impact analysis.[17]

---

[14] Section 706(f) of Title VII, 42 U.S.C. § 2000e-5(f), governs when a civil action may be filed by an aggrieved person, the EEOC, or the Attorney General, and section 104(a)(1) of the PWFA, 42 U.S.C. § 2000gg-2(a)(1), incorporates the powers, remedies, and procedures provided in various sections of Title VII, including section 706.
[15] PWFA NPRM, 88 Fed. Reg. at 54,750.
[16] Circular A-4, "Regulatory Analysis," (September 17, 2003), available at: https://www.whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/circulars/A4/a-4.pdf.
[17] Circular A-4, "Regulatory Impact Analysis: A Primer" (August 15, 2011), available at https://www.whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/inforeg/inforeg/regpol/circular-a-4_regulatory-impact-analysis-a-primer.pdf.

11. In light of Circular A-4's admonition that a good analysis is transparent and provides specific references to all sources of data,[18] the EEOC's IRIA as included in the NPRM featured over one hundred footnotes providing citations to sources and further explanations of methodology.

12. The IRIA estimates the costs of employers providing accommodations, but also notes that these cost estimates may be overstated for a variety of reasons.[19] For example, the analysis states that "[t]hese figures are almost certainly overestimates of the costs imposed by the rule, in part because some of the accommodations required by the proposed rule and underlying statute are already required under the ADA [Americans with Disabilities Act] and Title VII and some employers voluntarily provide accommodations. Due to a lack of data, however, the Commission was unable to account for this overlap in the above analysis."[20] The IRIA does not purport to estimate the "[t]he extent of the regulatory burden, if any, that the Pregnant Workers Fairness Act (PWFA) has imposed on Texas, such as costs Texas has incurred or actions Texas has taken in preparation for the PWFA becoming effective and being implemented."[21]

13. As the IRIA made clear, there is relatively little data on how many pregnant workers will require an accommodation or what the cost of a particular accommodation may be; for example, the NPRM states that "not all individuals who become pregnant will need a reasonable accommodation. Because there is very little research on the proportion of

---

[18] Circular A-4, "Regulatory Analysis," p. 3.
[19] PWFA NPRM, 88 Fed. Reg. at 54,763-64.
[20] *Id.* at 54,764.
[21] Notice of Consolidation with Trial on the Merits at 2, *Texas v. Garland,* No. 5:23-CV-034-H, ECF No. 73 (Oct. 20, 2023).

pregnant workers who need workplace accommodations, the Commission has generated a ranged estimate."[22]

14. With respect to the cost of an accommodation, the NPRM notes that "[s]ome of these accommodations, especially additional rest or bathroom breaks and provision of a stool or chair, are expected to impose minimal or no additional costs on the employer. Certain other types of accommodations, such as allowing the employee to avoid heavy lifting or exposure to certain types of chemicals, may be easy to provide in some jobs but more difficult to provide in others, necessitating temporary restructuring of responsibilities or transfer to a different position."[23] The NPRM further states that "[t]he Commission was unable to find any data on the average cost of reasonable accommodations related specifically to pregnancy, childbirth, or related medical conditions. The Commission has therefore relied on the available data on the cost of accommodations for individuals with disabilities for purposes of this analysis."[24]

15. Finally, the PWFA may reduce litigation costs by bringing greater certainty and allowing parties to avoid costly discovery. As the NPRM states, "by clarifying the rules regarding accommodations for pregnant workers, the PWFA and the proposed rule will decrease the need for litigation regarding accommodations under the PWFA. To the extent that litigation remains unavoidable in certain circumstances, the PWFA and the proposed rule are expected to eliminate the need to litigate whether the condition in question is a 'disability' under the ADA, and to limit discovery and litigation costs that arise under

---

[22] PWFA NPRM, 88 Fed. Reg. at 54,758.
[23] *Id.* at 54,759.
[24] *Id.*

        Title VII regarding determining if there are valid comparators, thus streamlining the issues requiring judicial attention."[25]

16. The IRIA is not the agency's final assessment of the economic impact of the PWFA. The EEOC included a request for public comment on any aspect of the IRIA, as well as multiple specific requests for comments on a variety of topics, including requests for any existing data quantifying the proportion of pregnant workers who need workplace accommodations,[26] for any existing data quantifying the average cost of accommodations related to pregnancy, childbirth, or related medical conditions,[27] and whether the estimates of time needed for an employer to perform compliance activities to implement the PWFA's requirements are accurate.[28]

---

[25] *Id.* at 54,754
[26] *Id.* at 54,758.
[27] *Id*. at 54,760.
[28] *Id*.

DX2-0007

17. In response to the NPRM, the EEOC received over 100,000 public comments, some of which addressed aspects of the IRIA. The EEOC is currently reviewing and analyzing the comments in anticipation of drafting a final rule, which will include an updated regulatory impact analysis informed by those comments. The rule will require a vote of the Commission before it becomes final.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 1st day of November, 2023.

*Carol Miaskoff*
_____
CAROL R. MIASKOFF
Legal Counsel
Office of Legal Counsel
U.S. Equal Employment Opportunity Commission